MEMORANDUM *
Adrian Macias-Curiel (“Curiel”) appeals his jury conviction of, and Adrian Ivan Macias (“Macias”) appeals his conviction and sentence for, importation of marijuana and possession of marijuana with intent to distribute. See 21 U.S.C. §§ 841, 952, 960. Curiel contends the district court improperly admitted testimony about prior incidents at the Calexico port of entry. Macias argues that (1) the government violated his Fifth Amendment rights by eliciting testimony about his post-Miranda silence; (2) the district court erred by denying his motion to sever his trial from that of Cu-riel; and (3) the district court erred when it denied him safety-valve relief from the statutory mandatory minimum sentence. *52 For the reasons discussed below, we affirm the district court.
We first address Curiel’s claim that the district court erred in allowing evidence of prior incidents in which he crossed the border in vehicles with empty, non-factory manufactured floor compartments. Evidence of prior bad acts may be admissible to provide “proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” Fed.R.Evid. 404(b). Here the court properly allowed evidence of an October 20, 2005 incident. That incident occurred just three weeks before the crossing that led to the subject’s arrest and subsequent trial, and was sufficiently similar to the offense charged that it tended to prove the material fact that Curiel knew of the hidden compartment and the contraband therein. See United States v. Smith, 282 F.3d 758, 768 (9th Cir.2002) (requiring materiality, sufficiency, similarity, and temporal proximity for the admission of prior wrongs). Furthermore, this evidence was introduced not by the government, but by Macias, and was highly relevant to Macias’ third-party culpability defense. See United States v. Vallejo, 237 F.3d 1008, 1023 (9th Cir.2001) (“[Fundamental standards of relevancy ... require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged.”) (internal quotation marks omitted). Curiel also challenges the purported admission of evidence tied to an incident at the border on May 6, 2006, but that claim is moot, because the court denied the government’s request to introduce that evidence.
We now address Macias’ arguments in turn. To support his claim of a Fifth Amendment violation, Macias claims the government made improper references to his post-arrest, post-Miranda silence in violation of Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However, in Anderson v. Charles, 447 U.S. 404, 408, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), the Supreme Court stated that “Doyle does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent.” “As our court has interpreted Charles, once a defendant makes post-arrest statements that ‘may arguably be inconsistent with the trial story’, he has raised a question of credibility.” United States v. Makhlouta, 790 F.2d 1400, 1404 (9th Cir.1986) (quoting United States v. Oehoar-Sanchez, 676 F.2d 1283, 1286 (9th Cir.1982)). Under this circuit’s precedent, the government may “probe this arguable inconsistency by inquiring] into what was not said at arrest.” Id. at 1404-05 (internal quotation marks and citations omitted). When a defendant chooses to speak, then, the “prosecutor may point out inconsistencies,” as well as the “omission of critical details.” Leavitt v. Arave, 383 F.3d 809, 827 (9th Cir.2004).
Here, testimony indicates that after Macias was arrested and read his Miranda rights, he told customs officers that he had crossed the border into Mexico, where Cu-riel was waiting with the dune buggy and trailer that was later found to contain marijuana. Macias made these statements during a twenty minute interview, which he ended by invoking his right to remain silent. At trial, however, Macias testified that his father did not meet him with the dune buggy and trailer. Instead he said they had traveled to a race track and obtained the buggy and trailer from three men he had never met before. En route to the track, Macias testified, he and his *53 father had also visited two female relatives, and eaten at a taco stand.
Macias argues that the government’s response to his testimony led to three purported Doyle violations. First, during questioning by the defense, a customs agent testified that, if he had the opportunity, he would have asked Macias more questions regarding his knowledge about the marijuana. Fearing that this statement might implicate Macias’ invocation of his right to remain silent, the trial judge promptly struck the testimony from the record, ordered jurors to disregard the testimony, and polled the jurors to ensure they were able to do so. This court has stated that no Doyle error occurs when “the district court promptly sustains a timely objection to a question concerning post-arrest silence, instructs the jury to disregard the question, and gives a curative jury instruction.” United States v. Lopez, 500 F.3d 840, 846 (9th Cir.2007) (holding no due process violation occurred where the district court sustained Doyle objections, struck the answer, and admonished the jury to disregard the answer) (citing United States v. Foster, 985 F.2d 466, 468 (9th Cir.1994)).
Second, on cross-examination, the government asked Macias whether he had told the agents about the relatives he said he visited, or the stop at a taco stand, or the trip to the races where he now said his father had purchased the buggy and borrowed the trailer from men he had never met before. The district court did not err in allowing these questions, because they focused on critical omissions and arguable inconsistencies between the statements Macias made after his arrest and his testimony at trial. This line of questioning was proper because “[t]he questions were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement.” Charles, 447 U.S. at 409,100 S.Ct. 2180.
Third, the prosecution’s closing statement did come dangerously close to an improper comment on Macias’ post-arrest silence, urging jurors to consider, in determining guilt or innocence, “not only what was said but what wasn’t said_” However, the prosecutor was not commenting on Macias’ invocation of his right to remain silent; rather the government was properly highlighting critical omissions within the statements Macias made to agents when he elected to speak.
Admittedly, this case is closer, and more complex, than most cases in this arena, because Macias spoke first, and then invoked his right to remain silent. In such a case, it becomes difficult to divine precisely what statements a person in custody would be expected to include in a statement. See Ochoa-Sanchez, 676 F.2d at 1286 (noting, in dicta, that “[i]f defendant had invoked his right to remain silent in response to Miranda warnings, questioning that asked why certain information had not been revealed would have been improper.”) However, this is not a case like United States v. Newman, 943 F.2d 1155, 1158 (9th Cir.1991), where the effect of statements made at trial “was to suggest to the jury that Newman must have been guilty because an innocent person would not have remained silent.” The effect of the statements at Macias’ trial was not to suggest that his silence implicated his guilt. Instead, the effect was to undermine his credibility—to attack the discrepancies between what Macias told the officers and what he testified to in court. “[Tjalking is not silence,” and the district court did not err when it allowed the prosecutor to “explore [Macias’] speech and its implications.” Leavitt, 383 F.3d at 827.
The dissent argues that this Court’s recent decision in United States v. Caruto, *54 532 F.3d 822 (9th Cir.2008), requires us to find that the prosecutor’s closing argument resulted in a Doyle violation. In Cando, this Court held that “the prosecutor’s argument, emphasizing omissions from Caru-to’s post-arrest statement that exist only because she invoked her right to counsel under Miranda, constitutes a violation of Caruto’s right to due process.” Id. at 824. In Cando, prosecutors acknowledged that “the alleged inconsistencies ... were omissions attributable to Caruto’s invocation of her Miranda rights.” Id. at 830. In other words, the alleged inconsistencies between Caruto’s trial testimony and post-arrest interview were due to “what she did not say in her post-arrest statement,” and not due to what she did say during her post-arrest statement. Id. (emphasis added). As such, the prosecutor’s argument was impermissibly “designed to draw meaning from silence.” Id. (quoting Charles, 447 U.S. at 409, 100 S.Ct. 2180). “Caruto could not fully explain why her post-arrest statement was not as detailed as her testimony at trial without disclosing that she had invoked her Miranda rights.” Id.
This case is distinguishable. Here, the testimony at trial was truly inconsistent with what Macias said during the post-arrest interview: when he met with the agents, Macias said he met his father just after he crossed the border into Mexico, and his father had in his possession the dune buggy and trailer in which the drugs were later discovered. At trial, by contrast, Macias testified that his father did not have the buggy and trailer when they met. Rather, they first had to visit a pair of female relatives and eat at a taco stand before going to a racetrack, where his father obtained the buggy and trailer from three men Macias said he had never seen before. In other words, the alleged inconsistencies between Macias’ trial testimony and post-arrest interview were due to what he said and not due to what he did not say. This is fundamentally unlike Canto, where the defendant’s “post-arrest statement and her trial testimony were not inconsistent.” Id. at 831. As such, although Macias did invoke his Miranda rights after giving a post-arrest statement, this case is much closer to Charles and Malchlouta: because Macias made a post-arrest statement that was arguably inconsistent with his trial testimony, he has raised a question as to his credibility such that the government may “probe this arguable inconsistency by inquir[ing] into what was not said at arrest.” Malchlouta, 790 F.2d at 1404-05 (internal quotation marks and citations omitted); see Charles, 447 U.S. at 408, 100 S.Ct. 2180.
Nor did the district court err in denying Macias’ motion to sever his trial from Curiel’s. Any “spillover” evidence implicating Curiel was not unduly prejudicial, and any prejudice was cured by the district court’s repeated instructions to the jury to consider such evidence only against Curiel. See United States v. Cuozzo, 962 F.2d 945, 950 (9th Cir.1992) (assessing prejudice in light of the jury’s ability to compartmentalize the evidence as it related to separate defendants, and emphasizing the importance of the judge’s diligence “in instructing the jury on the purposes to which various strands of evidence may be put.”).
Finally, the district court did not err when it denied Macias safety-valve relief from the statutory mandatory minimum sentence. Macias was “obligated to show by a preponderance of the evidence, that [h]e qualified for the safety valve provision[ ],” United States v. Washman, 128 F.3d 1305, 1307 (9th Cir.1997). Yet he failed to demonstrate that he had “truthfully provided to the Government all information and evidence [he] ha[d] concerning *55 the offense or offenses.” See 18 U.S.C. § 3553(f)(5). Macias consistently denied knowledge of the marijuana found in the trailer. Neither the government nor the jury credited this testimony, and the district court did not commit clear error in sharing their conclusion and denying safety-valve relief.
AFFIRMED.
PREGERSON, J.,

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.